UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

                Plaintiff,

v.                                          Case No. 25-cv-49-pp

MATTHEW SCULLION, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his civil rights. On April 1, 2025, the court ordered the plaintiff to pay the initial partial filing fees in all his cases or the court would dismiss them. Dkt. No. 13. The court recounted that it received his complaints in this case and in Case No. 25-cv-51 "on the same day, and those two complaints appear to contain the same allegations about a conduct report that the plaintiff received in the fall of 2022 and the proceedings that followed." Id. at 5. The court told the plaintiff that he "cannot proceed in two lawsuits on identical allegations about the same events." Id. The court advised the plaintiff that he could voluntarily dismiss either this case or Case No. 25-cv-51 without having to pay the $1.67 initial partial filing fee "or the remaining balance of the $350 filing fee in the case that he chooses to dismiss." Id. The court warned the

plaintiff that if he chose to proceed in both cases, he would owe the full $350 filing fee in both, "regardless of the outcome of each case." Id. at 6–7.

The plaintiff did not move to dismiss either this case or Case No. 25-cv-51. Instead, on April 11, 2025, the court received the initial partial filing fees for this case, Case No. 25-cv-51 and the plaintiff's four other pending cases. On July 23, 2025, the court issued a screening order in Case No. 25-cv-51 and allowed the plaintiff to proceed on Eighth Amendment claims against two defendants. Case No. 25-cv-51, Dkt. No. 13. The court has reviewed the complaint in this case and has determined that it does not seek to proceed on the same allegations as the amended complaint in Case No. 25-cv-51. Rather than dismiss this case, this decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the complaint, dkt. no. 1.

I.  **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 4, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $1.67. Dkt. No. 7. As stated above, the court received that fee on April 11, 2025. The court will grant the plaintiff's motion for leave to

2

Case 2:25-cv-00049-PP    Filed 08/13/25    Page 2 of 14    Document 14

proceed without prepaying the filing fee. The court will require the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint concerns events that allegedly occurred while the plaintiff was incarcerated at the Wisconsin Secure Program Facility (WSPF). It names as defendants Lieutenants Matthew Scullion and Kolbo; Captains Taylor and Esser; Warden Gary Boughton; Deputy Warden Paula Stoudt; Security Director Jacob Cirian; Sergeants Mezzenette[1] and Chad Winger; and institutional complaint examiners R. Boyer and E. Ray. Dkt. No. 1 at ¶¶4–14. The plaintiff sues all the defendants in their individual and official capacities. Id. at ¶15.

The plaintiff alleges that on October 15, 2022, "a group of correctional officers" came to his cell and told him that they were placing him on Temporary

---

[1] The plaintiff spells this defendant's name as "Mezzenette" in the caption but uses different spellings throughout the body of the complaint. The court will use the spelling from the caption.

Lockup (TLU). Id. at ¶18. The officers told the plaintiff that he was being placed on TLU "based on information that a confidential informant . . . had allegedly witnessed an assault." Id. Once the plaintiff was in segregation, Sergeant Mezzenette and Lieutenant Kolbo came to his cell and asked if he wanted to talk to either the Grant County Sheriff's Department or the Health Services Unit (HSU). Id. at ¶19. The plaintiff declined to speak to either because "his rights had not been read to him," and he asked to speak with an attorney. Id. He does not say whether he ever spoke with an attorney.

On October 26, 2022, Officer Winger, who the plaintiff says was "his advocate," served him a conduct report. Id. at ¶20. The plaintiff says that this report was served "11 days beyond the time limits per DOC 303," which he calls a "procedural error." Id. The plaintiff says that he "requested a full due process hearing" and asked that the victim of the alleged assault appear at his hearing or submit a written statement describing the assault to Winger for use at the hearing. Id. at ¶21.

The plaintiff alleges that on November 10, 2022, Captain Taylor held the due process hearing and denied the plaintiff's request to have the victim testify or provide a statement. Id. at ¶22. He says that he had a due process right to respond to this evidence because the disciplinary committee would base its decision on the victim's statement. Id. Taylor sentenced the plaintiff to 120 days' disciplinary separation. Id. The plaintiff says that the "false allegations were later used to place plaintiff on Administrative Confinement (AC)." Id. at ¶23.

On December 20, 2022, the plaintiff appealed his disciplinary conviction. Id. at ¶24. A week later, Deputy Warden Stoudt rejected the plaintiff's appeal, determined that the "findings of guilt were sufficient" and found that "no procedural error" had been committed. Id. On December 28, 2022, the plaintiff filed an institutional complaint about his conviction, claiming that Taylor had committed procedural error when he denied the plaintiff "the right to question the witness as allowed by defendants own rules." Id. at ¶25. Complaint examiner Boyer dismissed the complaint on February 7, 2023. Id. at ¶26. The plaintiff appealed Boyer's decision to the Corrections Complaint Examiner and "expressed dissatisfaction with the ICE's decision because it was not based on any facts." Id. at ¶27. The plaintiff also asserted that the complaint examiner disregarded his right to question the alleged victim and present evidence from the victim and the alleged informant, whose testimony he says "was of an exculpatory nature and would have exonerated the plaintiff of the charges." Id. He says that the complaint examiner did not make "any effort to investigate the plaintiff's claims," and that the complaint examiner and Corrections Complaint Examiner "just accepted the fabricated statements of defendant" Scullion. Id. at ¶28. On March 9, 2023, the Corrections Complaint Examiner upheld the complaint examiner's decision and denied the plaintiff's appeal. Id. at ¶29.

The plaintiff claims that Taylor and Winger violated his right to due process and equal protection of law under the Fourteenth Amendment by allowing the hearing on his conduct report to proceed without allowing the plaintiff to question the victim or requiring the victim to provide a written

statement. Id. at ¶31. He claims that Taylor further violated his rights when he found the plaintiff guilty of the conduct report and sentenced him to 120 days' disciplinary separation "for falsified claims." Id. at ¶32. The plaintiff asserts that defendants Stoudt, Boughton, Cirian, Boyer, Ray, Scullion, Taylor and Winger failed to investigate his claims under DOC policy and placed him in segregation for 120 days followed by administrative confinement from October 2022 through July 14, 2023. Id. at ¶33. He says that this violated his rights under the First, Eighth and Fourteenth Amendments. Id.

The plaintiff seeks declaratory judgment that all the defendants violated his rights and compensatory and punitive damages. Id. at p.9. He also asks the court "to sponge [sic]" the conduct report from his prison record. Id.

C. Analysis

Although these allegations are not identical to those in Case No. 25-cv-51, the plaintiff cannot proceed on any claim for many of the same reasons that the court dismissed some of the plaintiff's claims in the screening order in that case. The plaintiff first claims that defendants Taylor and Winger violated his rights under the Fourteenth Amendment when they allowed the hearing on his conduct report to proceed without allowing the testimony or statement of the victim of the alleged assault or an informant who reported the assault. The plaintiff says that this testimony was exculpatory and would have exonerated him. As the court explained in the screening order in Case No. 25-cv-51, "[a]n incarcerated person may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or

sentence, unless the conviction or sentence has been set aside." Case No. 25-cv-51, Dkt. No. 13 at 18 (citing Edwards v. Balisok, 520 U.S. 641, 646 (1997); Heck v. Humphrey, 512 U.S. 477, 486 (1994)). That "includes convictions and sentences 'arising out of prison disciplinary proceedings.'" Id. (quoting Olson v. Humphreys, Case No. 07-C-682, 2007 WL 2570231, at *3 (E.D. Wis. Aug. 30, 2007)). It is possible that the plaintiff could have a claim about Taylor and Winger not allowing him to present exculpatory evidence. See Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974). But that claim, if successful, would necessarily call into question the validity of his disciplinary conviction and sentence. That means that he cannot proceed on this claim unless and until he can show that his disciplinary conviction has been invalidated. The plaintiff does not say that his disciplinary conviction has been invalidated. Quite the opposite; he says that Stoudt denied his appeal from his conviction, and he asks the court to expunge his conviction from his prison record. Because the plaintiff's disciplinary conviction stands, he cannot proceed on a civil claim for damages related to that conviction or his 120-day sentence.

The complaint does not otherwise state a claim related to the plaintiff's disciplinary hearing. He has not alleged that Taylor was not an impartial decisionmaker (to which he was entitled). See Perotti v. Marberry, 355 F. App'x 39, 43 (7th Cir. 2009) (citing Wolff, 418 U.S. at 571). And the court will not presume that Taylor did not "properly discharge [his] duties" as disciplinary hearing officer. Higgason v. Lemmon, 6 F. App'x 433, 435 (7th Cir. 2001) (citing Bracy v. Gramley, 520 U.S. 899, 909 (1997)). The plaintiff also alleges that

Stoudt denied his appeal of his disciplinary conviction. But he alleges nothing suggesting that Stoudt disregarded evidence or unfairly denied his appeal. Even if he had, the court explained in Cas No. 25-cv-51 that "the plaintiff does not have a due process right to appeal his prison disciplinary conviction." Case No. 25-cv-51, Dkt. No. 13 at 19 (citing Wolff, 418 U.S. at 564–66; Jones v. Brown, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003); and Lowe v. Stockey, 36 F. App'x 353, 360 (10th Cir. 2002)).

The plaintiff generally alleges that several defendants failed to investigate his claims and allowed him to be placed in administrative confinement. But the complaint does not allege anything specific about defendants Boughton, Cirian or Scullion. The plaintiff says that Scullion provided "fabricated statements" to the complaint examiners, but he does not say what these statements were or explain how they were fabricated. The court explained in the screening order in Case No. 25-cv-51 that the plaintiff "cannot rely on 'vague references' to a group of defendants 'without specific allegations tying the individual defendants to the alleged unconstitutional conduct.'" Id. at 11 (quoting Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008)). The plaintiff must describe how *each defendant* "personally violated his rights" to state a claim against any of them. Id. (citing Grieveson, 538 F.3d at 778; and Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003)). Because the complaint fails to explain how defendants Boughton, Cirian and Scullion were involved in the alleged violation of the plaintiff's due process rights, it does not state a claim against them.

The plaintiff also may not proceed on a claim against defendants Boyer or Ray for dismissing or denying his institutional complaints. Incarcerated persons have no federal right to meaningful review of their grievances, including an investigation into their allegations. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Steinke v. Dittmann, Case No. 17-cv-656, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020). The plaintiff cannot proceed on a claim against the complaint examiners for how they allegedly handled or mishandled his grievances. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011).

The complaint also does not state a claim against Sergeant Mezzenette and Lieutenant Kolbo. The only allegation against these defendants is that they asked the plaintiff if he wanted to speak with the Sheriff's office or HSU staff. The plaintiff says that he declined and asked to speak with an attorney instead. He does not say whether these defendants allowed him to speak with an attorney or whether they took any other action. These vague allegations do not suggest that Mezzenette or Kolbo were involved in the alleged deprivation of the plaintiff's rights, and they do not otherwise state a claim. Nor does the plaintiff assert any claim against them elsewhere in his complaint.

To the extent that the plaintiff seeks to proceed on allegations that the defendants violated various prison policies, he does not state a claim. Section 1983 protects against constitutional violations; it does not protect against violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir.

2003). The plaintiff may not proceed on a claim related to any prison officials' alleged violations of DOC policy.

Finally, the plaintiff is not entitled to much of the relief he seeks. The plaintiff may seek damages, but he also seeks a declaratory judgment that the defendants violated his rights. The plaintiff is not entitled to declaratory relief because he no longer is confined at WSPF and has not alleged that the defendants continue to violate his rights. See Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The plaintiff also asks the court to expunge the conduct report filed against him, but he cannot seek this relief under §1983. To seek expungement of the conduct report, he must file a petition for a writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v. Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)).

The complaint does not state a claim. But it is possible that if the plaintiff were to provide more detail and additional information, he could state a claim. The court will give him an opportunity to amend his complaint to address the issues the court has described and to better explain the claims in his complaint. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long

or contain legal language or citations to statutes or cases, but it does need to give the court and each defendant notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end

of the day on **September 19, 2025**. If the court receives an amended complaint from the plaintiff by day's end on September 19, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by day's end on September 19, 2025, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.33** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 13th day of August, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.